## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
## FIRST JUDICIAL DISTRICT

BRADLEY BALLARD                                             PLAINTIFF

VS.                                                CIVIL ACTION NO.: 251-10-440CIV

AMERICAN OPTICAL CORPORATION; ET AL.              DEFENDANTS

### NOTICE

TO:   MINE SAFETY APPLIANCES COMPANY
      C/O THOMAS B. HOTTOP
      COMMANDING EXECUTIVE OFFICER
      121 GAMMA DRIVE, RIDC INDUSTRIAL PARK
      PITTSBURGH, PENNSYLVANIA 13528

   The enclosed summons and complaint are served pursuant to Rule 4(c)(3) of the
Mississippi Rules of Civil Procedure.

   You must sign and date to acknowledgement at the bottom of this page.  If you are
served on behalf of a corporation, unincorporated association (including a partnership), or
other entity, you must indicate under your signature your relationship to that entity.  If you
are served on behalf of another person and you are authorized to receive process, you must
indicate under your signature your authority.

   If you do not complete and return the form to the sender within 20 days of the date
of mailing shown below, you (or the party on whose behalf you are being served) may be
required to pay any expenses incurred in serving a summons and complaint.

   If you do complete and include this form, you (or the party on whose behalf you are
being served) must respond to the complaint within 30 days of the date of your signature.
If you fail to do so, judgment by default will be taken against you for the relief demanded
in the complaint.

   I declare that this Notice and Acknowledgement of Receipt of Summons and
Complaint was mailed on _August 23_____, 2010.

                              _Patricia Woodward_
                              **Signature**



EXHIBIT
A

tabbies

AUG 2 6 2010

IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

BRADLEY BALLARD                                              PLAINTIFF

VS.                                          CIVIL ACTION NO.: 251-10-440CIV

AMERICAN OPTICAL CORPORATION; ET AL.          DEFENDANTS

THIS ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS
AND COMPLAINT MUST BE COMPLETED

    I acknowledge that I have received a copy of the summons and of the complaint in the above-captioned matter in the State of _____ on behalf of Mine Safety Appliances Company.

_____
Signature

_____
(Relationship to Entity/Authority
to Receive Service of Process)

_____
Date of Signature

STATE OF _____
COUNTY OF _____

    Personally appeared before me, the undersigned authority in and for the State and County aforesaid, the above name _____, who solemnly and truly declared and affirmed before me that the matters and facts set forth in the foregoing Acknowledgement of Receipt of Summons and Complaint are true and correct as therein stated.

    Affirmed and subscribed before me this _____ day of _____, 2010.

_____
Notary Public

_____
My Commission Expires

IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

BRADLEY BALLARD                                              PLAINTIFF

VS.                                        CIVIL ACTION NO.: 251-10-440CIV

AMERICAN OPTICAL CORPORATION; ET AL.                        DEFENDANTS

### NOTICE

TO:   MINE SAFETY APPLIANCES COMPANY
      C/O THOMAS B. HOTTOP
      COMMANDING EXECUTIVE OFFICER
      121 GAMMA DRIVE, RIDC INDUSTRIAL PARK
      PITTSBURGH, PENNSYLVANIA 13528

The enclosed summons and complaint are served pursuant to Rule 4(c)(3) of the Mississippi Rules of Civil Procedure.

You must sign and date to acknowledgement at the bottom of this page. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within 20 days of the date of mailing shown below, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint.

If you do complete and include this form, you (or the party on whose behalf you are being served) must respond to the complaint within 30 days of the date of your signature. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare that this Notice and Acknowledgement of Receipt of Summons and Complaint was mailed on ___August 23___, 2010.

_Patricia Woodward_
**Signature**

IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

BRADLEY BALLARD                                              PLAINTIFF

VS.                                              CIVIL ACTION NO.: 251-10-440CIV

AMERICAN OPTICAL CORPORATION; ET AL.            DEFENDANTS

THIS ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS
AND COMPLAINT MUST BE COMPLETED

    I acknowledge that I have received a copy of the summons and of the complaint in the above-captioned matter in the State of _____ on behalf of Mine Safety Appliances Company.

_____
Signature

_____
(Relationship to Entity/Authority
to  Receive Service of Process)

_____
Date of Signature

STATE OF _____
COUNTY OF _____

    Personally appeared before me, the undersigned authority in and for the State and County aforesaid, the above name _____, who solemnly and truly declared and affirmed before me that the matters and facts set forth in the foregoing Acknowledgement of Receipt of Summons and Complaint are true and correct as therein stated.

    Affirmed and subscribed before me this _____ day of _____, 2010.

_____
Notary Public

_____
My Commission Expires

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

BRADLEY BALLARD                                          PLAINTIFF

VS.                                          CIVIL ACTION NO.: 251-10-440CIV

AMERICAN OPTICAL CORPORATION; ET AL.                    DEFENDANTS

### SUMMONS

THE STATE OF MISSISSIPPI

TO:   MINE SAFETY APPLIANCES COMPANY
      C/O THOMAS B. HOTTOP
      COMMANDING EXECUTIVE OFFICER
      121 GAMMA DRIVE, RIDC INDUSTRIAL PARK
      PITTSBURGH, PENNSYLVANIA 15238

### NOTICE TO DEFENDANT

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of your written response to the Complaint to R. Allen Smith, Jr., Esq., The Smith Law Firm, PLLC, 681-B Towne Center Blvd., Ridgeland, MS 39157. Your response must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT, this the _11_ day of _____, 2010

BARBARA DUNN,
CIRCUIT CLERK

ATTEST A TRUE COPY                    BY: _____, D.C.
AUG 11 2010
BARBARA DUNN, CIRCUIT CLERK
BY _____ D.C.

IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

BRADLEY BALLARD                                                              PLAINTIFF

VS.                                          CIVIL ACTION NO. 25110-440CIV

AMERICAN OPTICAL CORPORATION;
MINE SAFETY APPLIANCES, INC;              **FILED**
MISSISSIPPI RUBBER & SPECIALTY COMPANY;
SHERWIN-WILLIAMS COMPANY;                  JUN 08 2010
JOHN DOE DEFENDANTS 1-500; AND             BARBARA DUNN, CIRCUIT CLERK DEFENDANTS
JOHN DOE CORPORATE DEFENDANTS 1-500        BY_____ D.C.

## COMPLAINT

### (JURY TRIAL REQUESTED)

COMES NOW BRADLEY BALLARD, hereinafter referred to as Plaintiff, and

files this Complaint against Defendants, American Optical Corporation; Mine Safety

Appliances, Inc.; Mississippi Rubber & Specialty Company; Sherwin-Williams

Company; John Doe Defendants 1-500; and John Doe Corporate Defendants 1-500, and

for cause of action would respectfully show unto the Court the following, to-wit:

1.      Plaintiff, BRADLEY BALLARD, is an adult resident citizen of Rankin

County and resides at 396 Woodoak Drive, Pearl, Mississippi.

2.      Defendant, AMERICAN OPTICAL CORPORATION is a foreign

corporation that has done and/or is doing business in the State of Mississippi. This

Defendant may be served with process by serving its agent, c/o C. T. Corporation, 111

Eighth Avenue, New York, New York 10011.  This is a Defendant that manufactured,

marketed, distributed and sold defective personal respiratory equipment that was used

around asbestos. Plaintiff wore defective personal respiratory products manufactured by

this Defendant while working as a painter from approximately 1990 through 2002. The

defective personal respiratory products manufactured by this Defendant and referenced above were sold under the brand name American Optical and is a dust mask and respirator used and marketed for use around asbestos materials.

3.     Defendant, MINE SAFETY APPLIANCES, INC., is a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania and doing business in the State of Mississippi.  However, said defendant does not maintain either a regular place of business or an agent for service of process in this state.  Said defendant, therefore, may be served with citation by serving the current Commanding Executive Officer of the Defendant, to wit: Thomas B. Hottop, CEO, 121 Gamma Dr., RIDC Industrial Park, Pittsburgh, Pennsylvania 13528, via certified mail.  This is a Defendant that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around asbestos. Plaintiff wore defective personal respiratory products manufactured by this Defendant while working as a painter from approximately 1990 through 2007.

4.     Defendant, MISSISSIPPI RUBBER & SPECIALTY COMPANY is a Mississippi corporation and may be served with process and summons by serving its agent Greg Herbert at 715 East McDowell Road, Jackson, Mississippi 39201.

5.     SHERWIN-WILLIAMS COMPANY is a foreign corporation organized and existing under and by virtue of the laws of the State of Ohio and doing business in the State of Mississippi.  This Defendant may be served with process by serving its registered agent, Corporation Service Company, 506 South President Street, Jackson, Mississippi 39201.

6.     JOHN DOE DEFENDANTS 1-500 are Defendants whose identities are

unknown at this time. It is believed that these other corporations and/or individuals supplied, manufactured, and or distributed asbestos containing products to the Plaintiff's work sites and the Plaintiff was exposed to said asbestos-containing products or that these corporations and/or individuals manufactured, supplied, distributed products which caused asbestos containing products to become airborne, and the Plaintiff was exposed to said asbestos and/or these corporations and/or individuals which caused asbestos to become airborne, and the Plaintiff was exposed to said asbestos. When their identities are known, this complaint will be amended to properly name same.

7.    JOHN DOE CORPORATE DEFENDANTS 1-500 are Defendants whose identities are unknown at this time. It is believed that these other corporations and/or individuals supplied, manufactured, and or distributed asbestos containing products to the Plaintiff's work sites and the Plaintiff was exposed to said asbestos-containing products or that these corporations and/or individuals manufactured, supplied, distributed products which caused asbestos containing products to become airborne, and the Plaintiff was exposed to said asbestos and/or these corporations and/or individuals which caused asbestos to become airborne, and the Plaintiff was exposed to said asbestos. When their identities are known, this complaint will be amended to properly name same.

8.    All of the above Defendant corporations are citizens of Mississippi or have either obtained certificates of authority to transact business in Mississippi pursuant to §79-1-211 et seq., Mississippi Code of 1972, or have transacted business in Mississippi without a certificate of authority, but within the contemplation of § 13-3-57 of said Code.

9.    Venue is proper in Hinds County, Mississippi, for the First Judicial District, pursuant to M.C.A. §11-11-3.

## BACKGROUND

10.    Each of the Defendants mined, designed, evaluated, manufactured, packaged, furnished, supplied and/or sold adhesives, construction materials, insulation, fiber or other products, that each contained fibrous, incombustible, chemical-resistant, mineral substances commonly called "asbestos," or other substances such as diatomaceous earth more fully set forth below.

11.    The Defendants are as follows:

A.    AMERICAN OPTICAL CORPORATION that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around asbestos.

B.    MINE SAFETY APPLIANCES, INC., that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around asbestos.

C.    MISSISSIPPI RUBBER supplied insulation and gasket material to which Plaintiff was exposed.

D.    SHERWIN-WILLIAMS COMPANY supplied paint products and material to which Plaintiff was exposed.

E.    JOHN DOE DEFENDANTS 1-500 are Defendants whose identities are unknown at this time.  It is believed that these other corporations and/or individuals supplied, manufactured, and or distributed asbestos containing products to the Plaintiff's work sites and the Plaintiff was exposed to said asbestos-containing products or that these corporations and/or individuals

4

manufactured, supplied, distributed products which caused asbestos containing products to become airborne, and the Plaintiff was exposed to said asbestos and/or these corporations and/or individuals which caused asbestos to become airborne, and the Plaintiff was exposed to said asbestos.

F.    JOHN DOE CORPORATE DEFENDANTS 1-500 are Defendants whose identities are unknown at this time.  It is believed that these other corporations and/or individuals supplied, manufactured, and or distributed asbestos containing products to the Plaintiff's work sites and the Plaintiff was exposed to said asbestos-containing products or that these corporations and/or individuals manufactured, supplied, distributed products which caused asbestos containing products to become airborne, and the Plaintiff was exposed to said asbestos and/or these corporations and/or individuals which caused asbestos to become airborne, and the Plaintiff was exposed to said asbestos.

All references to "asbestos" in this Complaint shall mean and be limited to the Defendants' products described in this paragraph.

12.    During all or part of the "exposure period," the Plaintiff worked as a painter, with Fornea Road Boring at various station locations throughout the City of Jackson, Mississippi, from approximately 1990 through 2002.  Throughout said period of exposure and at all employments, the Plaintiff was exposed to and/or worked with the products as identified in the previous paragraphs.

13.    When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself in lung disease, asbestosis, mesothelioma, pulmonary and broncho genic carcinoma, and cardiac disease, among other diseases and injuries.

14.    Each of the Defendants knew or should have known through industry and medical studies, the existence of which was unknown to Plaintiff of the health hazards to Plaintiff inherent in the asbestos-containing products prepared, supplied, and sold for use in the State of Mississippi. Instead of warning the Plaintiff, other intended users, and the general public about these dangers, the Defendants ignored or actively and fraudulently concealed such information, or condoned such concealment, and commanded, directed, advised, encouraged, aided, abetted, or conspired with others or each other in so doing in order to sell asbestos and avoid litigation by those who were injured from asbestos inhalation. Said actions or inactions constitute gross negligence and show a callous disregard for the rights and safety of the Plaintiff and others giving rise to the imposition of punitive damages against the Defendants herein.

15.    In connection with his work during the exposure period, the Plaintiff was exposed to and inhaled, or otherwise ingested, significant quantities of such asbestos, having neither knowledge nor reason to believe that asbestos was dangerous.

16.    As a direct and proximate contributing result of having inhaled, ingested or otherwise being exposed to asbestos during the exposure period, the Plaintiff has received injuries, both physically and mentally including, without limitation, the following conditions:

a.    Asbestosis;

    b.       Impaired Pulmonary Capacity;

    c.       Reduced Lung Volume;

    d.       Interstitial Lung Fibrosis;

    e.       Injury to lung tissue and/or pleura;

    f.       Increased Risk for Cancer; and

    h.       Physical and mental anguish associated with one or more of the preceding conditions.

17.    Plaintiff further charges that as a direct and proximate result of having inhaled, ingested, or otherwise being exposed to asbestos, he has received permanent and painful injuries. Plaintiff would further show that he has suffered physical and mental pain and anguish, medical expenses, loss of wages, loss of wage earning capacity and will continue to sustain damages of the above type in the future including, but not limited to, physical and mental pain and anguish, disability, future medical expenses and loss of the enjoyment of life.

18.    Because of the latency period of the above asbestos injuries and because of the active concealment by the Defendants of the causes and effects of exposure to asbestos, the Plaintiff has only recently discovered his injuries.

## COUNT ONE

### Strict Liability

19.    Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint for all purposes.

20.    The Defendants and/or their predecessor entities were engaged in, or materially participated in, or aided and abetted in the business of selling asbestos and

materials containing asbestos, which were expected to and did reach Mississippi and

equipment in and around Mississippi, as well as other work sites where Plaintiff was

employed, without substantial change in the condition in which they were sold, where

said products released asbestos fibers which were inhaled and ingested by the Plaintiff in

connection with his work.

21.    The asbestos was in a defective condition unreasonably dangerous to the

Plaintiff who was the intended and foreseeable user or bystander of the asbestos.  These

defects included, without limitation, the following:

     a.     Inherent and known properties common to the asbestos sold by the Defendants that created unreasonably high potential for causing respiratory diseases, cancer and other health problems to workers or members of such workers' households who would be exposed to asbestos.

     b.     Lack of warnings or lack of sufficient warnings by the Defendants of the inherently dangerous properties of asbestos when used for the purpose for which it was manufactured and sold.

     c.     Lack of instructions or lack of sufficient instructions by the Defendants for eliminating or minimizing the health risks inherent in the use of asbestos.

     d.     Lack of reasonable inspections by the Defendants of their asbestos products to ensure that such asbestos products contained sufficient warnings of the dangerous properties of asbestos.

     e.     Lack of reasonable inspections by the Defendants of their asbestos products to ensure that such asbestos products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of asbestos.

     f.     Lack of tests or lack of sufficient tests by the Defendants to determine the harmful effects of asbestos on intended users and bystanders.

     g.     Defective designs by the Defendants calling for the inclusion of asbestos in products that did not require asbestos, and where alternate, equally suitable substances were available.

h.   Lack of warnings or lack of sufficient warnings by the Defendants upon their discovering the full extent of the dangers presented by asbestos-containing materials and products.

22.   Each of the Defendants knew or should have known that the Plaintiff would be exposed to their asbestos products without inspection of the medical literature by the Plaintiff on the adverse health effects of asbestos. By marketing the asbestos-containing products without warning of the dangerous characteristics of the products, the Defendants represented to the Plaintiff and the public, who justifiably relied thereon, that asbestos was not dangerous.

23.   The defective conditions of the Defendants' asbestos products proximately caused or contributed to the Plaintiff's injuries and damages as described in this Complaint.

24.   Defendants' actions were performed intentionally or with disregard for the health and safety of Plaintiff.

25.   WHEREFORE, the Plaintiff demands both compensatory and punitive damages against the Defendants in an amount to be determined by a jury at trial.

## COUNT TWO

### Negligence

26.   Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint for all purposes.

27.   Each of the Defendants had, but breached, a duty to the Plaintiff to exercise the highest standard of care in designing, testing, manufacturing, marketing, and selling asbestos which is an extraordinarily and inherently dangerous substance. The breached duties included, without limitation, the duty:

a.  To select the types of asbestos or alternate materials that would reduce or eliminate health hazards to those who would work with, and in the vicinity of asbestos.

b.  To warn adequately of the extraordinary health hazards known by the Defendants to be associated with asbestos use.

c.  To instruct adequately in methods of using asbestos that would reduce the danger of inhalation or ingestion of asbestos dust.

d.  To test adequately the asbestos products to determine the dangers concomitant with their use.

e.  To remove the asbestos products from the stream of commerce upon discovering their dangerous properties.

f.  To inspect the asbestos products for adequate warnings and instructions.

28.  As a direct and proximate result of the Defendants' aforesaid breaches of their duties to the Plaintiff, the Plaintiff has sustained the injuries and damages described herein.

29.  In breaching or materially assisting others in breaching their duties to the Plaintiff, as described above, the Defendants acted intentionally, with gross negligence, recklessly, maliciously and wantonly in that the Defendants and each of them knew or should have known through data available exclusively to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended and foreseen by the Defendants, and that each of their aforesaid breaches of duty would result in the injuries suffered by Plaintiff.

30.  WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount to be determined by a jury at trial.

## COUNT THREE

### Breach of Warranties

31.     Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint for all purposes.

32.     The Plaintiff reasonably relied upon the Defendants who were manufacturers, sellers, or distributors of asbestos-containing products to exercise their skills and judgment to select and furnish goods of a suitable and reasonably safe nature and to furnish products fit for the particular purposes intended and to be supplied in a merchantable condition.

33.     Defendants breached their legal duties in that their products were not sold and furnished in a merchantable and reasonably safe condition and were not fit for the particular purpose intended in accordance with the laws of the State of Mississippi.

34.     As a direct and proximate result of the Defendants' aforesaid breaches and breaches of their legal duties owed to the Plaintiff, the Plaintiff has sustained injuries and damages as described herein.

35.     WHEREFORE, the Plaintiffs demand judgment of, from, and against the Defendants jointly, severally, and collectively in an amount to be determined by a jury at trial.

## COUNT FOUR

### Fraudulent Concealment/Misrepresentation/
### Alteration of Medical Studies/Conspiracy

36.     Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint for all purposes.

37.     Defendants named herein, individually and as agents of one another and a

co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed and conspired

among themselves and with other asbestos manufacturers and distributors to injure

Plaintiff.

38.     Defendants named herein knew that the others' conduct constituted a

breach of duty and gave substantial assistance or encouragement to the others to conduct

itself likewise.

39.     The Defendants acted in the following fashion:

a.      Metropolitan Life Insurance Company ("Met Life") required a
        tangible *quid pro quo* from McGill University in the 1920s in
        exchange for their providing funding for a study of asbestos
        disease in Canadian miners.  The study revealed asbestos miners
        suffered from asbestosis.  The study was never published and
        agents of Met Life materially misrepresented in the published
        literature this known fact.

b.      In 1932, Met Life, through its agents, Dr. Anthony Lanza, Dr.
        Fellos, and others, assisted the Johns-Manville corporation with
        medical examinations of over 1,000 employees of Johns-
        Manville's factory in Manville, New Jersey.  The report of his
        study shows that a large percentage of the employees suffered from
        asbestosis including employees not directly involved in the
        manufacturing process.  This 1932 medical survey was not
        published in the medical literature and, therefore, was unavailable
        to scientist studying the issue of the asbestos disease.  Further
        collaboration between the conspiring asbestos producers and Met
        Life officials continued this trend of intentional cover-up.

c.      Beginning in approximately 1934, Johns-Manville Corporation,
        through its agents, Vandiver Brown and attorney, J. C. Hobart, and
        conspirator, Raybestos-Manhattan, through its agents, Sumner
        Simpson and J. Rohrback, suggested to Dr. Lanza, Associate
        Medical Director of Met Life (insurers of Manville, Raybestos, and
        others) that Dr. Lanza publish a study on asbestosis in which Dr.
        Lanza would affirmatively misrepresent a material fact about
        asbestos exposure, i.e., the seriousness of the disease process,
        asbestosis.  This was accomplished through intentional deletion of
        Dr. Lanza' description of asbestosis as "fatal" and through other

selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was then known to be. As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935. The Defendants were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raybestos, and others, as well as Met Life, the insurer.

d.   In 1936, conspirators, American Brake Block Corporation, Asbestos Manufacturing Company, Gate Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H. K. Porter Company), Union Asbestos and Rubber Company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientist from disclosing material scientific data resulting in numerous misstatements of fact being made at scientific meetings.

e.   On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gate Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Inc., Thermoid Company (whose assets and liabilities were later purchased by H. K. Porter Company), Union Asbestos and Rubber Company, and U. S. Gypsum Company. U. S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

f.   At this November 11, 1948, meeting, these Defendants and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories

beginning in 1936.  Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos-containing products.

g.   At this meeting, the Defendants intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald.  The acts of these Defendants were carried out by co-conspirator Defendant Met Life's agent, Dr. Lanza.  These Defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and the class of persons exposed to asbestos, including Plaintiffs.

h.   As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January, 1951, in the *Archives of Industrial Hygiene and Occupational Medicine* (Vol. 3, No. 1), a journal of the American Medical Association.  The published version stressed those portions of Gardner's work that the conspirators wished stressed, but omitted references to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLVs).  Furthermore, that article made a false claim that the published report was the "complete survey" of Dr. Gardner's work.  The Defendants thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries, government officials, medical doctors, agencies, the public, and others.

i.   Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

j.   The following conspirators and others were members of the trade association 'known as Quebec Asbestos Mining Association (Q.A.M.A.): Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), the Celotex Corporation (successor to Quebec Asbestos Corporation), National Gypsum Company (n/k/a Asbestos Claims Management Corporation), and Turner & Newall (individually and

successor to Bell Asbestos).  The members of Q.A.M.A.
participated in the above-described misrepresentation of the work
of Dr. Gardner published by Dr. Vorwald in the AMA Archives '*of
Industrial Health* in 1951.  Evidence of the Q.A.M.A.'s
involvement in this misrepresentation arises from co-conspirator
Johns-Manville's membership in the Q.A.M.A., as well as
correspondence from co-conspirators indicating close monitoring
of the editing process by Q.A.M.A.'s representative, Ivan
Sabourin, acting on behalf of all Q.A.M.A.'s members.

k.       Defendants who were members of Q.A.M.A. began on or about
1950 to formulate a plan to influence public opinion about the
relationship between asbestos and cancer by influencing the
medical literature on this subject and then touting and
disseminating this literature to the public and to organizations and
legislative bodies responsible for regulatory controls of asbestos
with the specific intent of misrepresenting the existing scientific
information and suppressing contrary scientific data in their
possession and control.

l.       This plan of misrepresentation and influence over the medical
literature began on or about 1950 when the Q.A.M.A. members
selected Saranac Laboratories to do an evaluation of whether
cancer was related to asbestos.  After a preliminary report authored
by Dr. Vorwald in 1952 indicated that a cancer/asbestos
relationship might exist in experimental animals, the Q.A.M.A.
members refused to further fund the study and it was terminated
and never publicly discussed.

m.      As a result of the termination of this study, these Defendants
Fraudulently withheld information from the public and
affirmatively misrepresented to the public and responsible
legislative and regulatory bodies that asbestos did not cause cancer,
including affirmative misrepresentations by conspirators' agents
Kenneth W. Smith, M.D., Paul Cartier, M.D., Arthur J. Vorwald,
M.D., Anthony J. Lanza, M.D., Vandiver Brown, and Ivan
Sabourin, said misrepresentations being direct to, *inter alia*, U.S.
Government officials, Canadian government officials. U.S.
National Cancer Institute, other medical organizations, and the
general public, including Plaintiffs.

n.       Subsequently, the Q.A.M.A. Defendant conspirators contracted
with the Industrial Hygiene Foundation (I.H.F.) And Dr. Daniel
Braun to further study the relationship between asbestos exposure,
asbestosis and lung cancer.  In 1957, Dr. Braun and Truan reported
to the Q.A.M.A. asbestosis did increase a worker's chances of

incurring lung cancer.

o.   The Q.A.M.A. Defendants thereafter caused in 1958 a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in persons asbestosis was edited out by agents of the Q.A.M.A.  The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the Defendant conspirators to be patently false.

p.   By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting a document finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. Defendants affirmatively misrepresented to the public and concealed from the public the extent of risks associated with inhalation of asbestos fibers.

q.   In approximately 1958, the Q.A.M.A. Defendants publicized the edited works of Dr. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

r.   The fraudulent misrepresentations beginning in 1946, as elaborated above and continuing with the publication of the 1958 Braun/Truan study, influenced the standards set for TLVs and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

s.   In 1967, the Q.A.M.A. Defendants determined at their trade association meeting that they would intentionally mislead consumers about the extent of risks involved in inhalation of asbestos products.

t.   In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories.  The following conspirators are in attendance: Johns-Manville, Turner & Newall, Raybestos-Manhattan, and Q.A.M.A. members by way of theirs agents, Cartier, Sabourin, and Lechance.

u.   At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos was also discussed.  In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these Defendants conspired to prevent

publication of the record in this 1952 Saranac Symposium and it was not published. In addition, the conspirators induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess tumors in animals , thereby fraudulently misrepresenting existing data, albeit secret, that should not be publicized because of the secrecy provisions contained in the 1936 Saranac Agreement required by the asbestos industry members.

v.    The following conspirators were members of the Magnesia Insulation Manufacturers Association (MIMA): Philip-Carey Corporation (predecessor to Celotex), Johns-Manville and others.

w.    In 1955, these conspirators caused to be published the MIMA 85% Magnesia Insulation Manual. This manual falsely and fraudulently misrepresented that asbestos containing products offered no hazard to workers who used these products.

x.    The following conspirators were members of the trade organizations known as the Asbestos Textile Institute (ATI): Raybestos-Manhattan, Johns-Manville, H. K. Porter, Keasby & Mattison (individually and through its alter-ego Turner & Newall), National Gypsum (n/k/a Asbestos Claims Management Corporation), and others.

y.    In 1947, the members of the ATI received a report from W.C. L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure. These Defendants caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing TLV was acceptable. Thereafter, these Defendant conspirators withheld additional material information on the dust standards from the American Conference of Governmental Industrial Hygienist (ACGIH), thereby further influencing evaluations for asbestos exposure.

z.    In 1953, conspirator National Gypsum (n/k/a Asbestos Claims Management Corporation), through its agents, in response to an injury from the Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed from such applicators the need for

respirators.

aa.  In 1955, Johns-Manville, through its agent, Kenneth W. Smith, M.D., caused to be published in the AMA *Archives of Industrial Health*, an article entitled "Pulmonary Disability in Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

ab.  In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (individually and as agent for other alleged co-conspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer when, in fact, the conspirators were in secret possession of several studies that demonstrated that positive evidence did exist.

ac.  In 1957, the members of the ATI jointly rejected a proposed research study on cancer and asbestos, and this resulted in fraudulent concealment from the public of material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

ad.  In 1964, the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irving J. Selikoff. Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

ae.  In 1970, through their agents, Defendants, the Celotex Corporation and Carey-Canada, affirmatively misrepresented that it had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease. This constituted a fraudulent misrepresentation about the material facts known to these Defendants.

af.  All conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos Manhattan, and Anthony J. Lanza, M.D., acting on behalf of Met Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-

conspirators for the other conspirators.

40.     As a direct and proximate result of the Defendants' intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, and upon which data the Plaintiff and/or those charged with warning them reasonably relied, the Plaintiff inhaled or otherwise was exposed and ingested hazardous asbestos dust, resulting in the injuries described above.

41.     Additionally, and alternatively, as a direct and proximate result of the Defendant's actions and omissions as described above, the Plaintiffs were caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Plaintiff by depriving the Plaintiff, his employers, and the general public of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid this exposure. Because of this ignorance and intentional failure to warn, the Plaintiff inhaled, was exposed to or otherwise ingested hazardous asbestos dusts, resulting in the injuries described above.

42.     The Defendants fraudulently concealed from the Plaintiff the alteration of its published test results, the actions and omissions and concerted design and conspiracy, all as described in the paragraphs above, until the Plaintiff discovered said conduct following these diagnoses of asbestos related injuries.

43.     WHEREFORE, the Plaintiff demands both compensatory and punitive damages from Defendants in sums to be determined at trial.

## COUNT FIVE

### (Conspiracy of Silence)

44.     Plaintiff re-alleges and incorporates the foregoing allegations of this

Complaint for all purposes.

45.   Additionally, all Defendants herein were members of various asbestos trade organizations like Asbestos Textile Institute, the Magnesia Insulation Manufacturers and National Insulation Manufacturers Association and sponsors of medical and scientific research organizations like the Industrial Hygiene Foundation.

46.   These trade organizations were created and did promote the use of asbestos and asbestos containing products and participated in supporting and sponsoring research into the health dangers of asbestos at laboratories.  This research showed a link between asbestos inhalations and lung cancer.  However, this research was never made public.  In fact, this research was deliberately withheld in order to minimize public awareness of the dangers of working with their asbestos containing products and to maximize the profits of defendants.

47.   The Defendants, individually and as members of these various trade organization, conspired within its own organization and with each other and others, to materially alter scientific research, to withhold information from the public about the dangers of asbestos, to falsely advertise their products as safe and non-toxic, and to misrepresent the dangers and hazards of asbestos to the public, consumers and governmental agencies.

48.   As a result of this conspiracy of silence, Plaintiff suffered injuries.

## COUNT SIX

### Damages

49.   Plaintiff re-alleges and incorporates the foregoing allegations of this Complaint for all purposes.

50.   As a direct and proximate result of Defendants' breach of its duties to the Plaintiff as delineated in all counts above, the Plaintiff has sustained the asbestos related injuries, diseases, illnesses and/or conditions set forth above along with pain and suffering, the undergoing and continuing undergoing of medical treatment, medical expenses, along with past, present and future disability, impairment of wage earning capacity, lost wages, and a diminution in quality and enjoyment of life, which includes mental anguish, fear, and severe emotional distress associated with knowing that there is no cure for these diseases and illnesses.

51.   In breaching their duties to the Plaintiff as described above, the Defendants have acted intentionally, with gross negligence, recklessly, maliciously or wantonly in that the Defendants knew or should have known through data available to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended or foreseen by the Defendants, and that their aforesaid breaches of duty would result in the complained of injuries and damages to the Plaintiff, thus entitling the Plaintiff to recover punitive or exemplary damages for the Defendant outrageous conduct as set forth herein.

52.   Plaintiff in this action does not assert any claims for, does not seek damages for, and disclaims recovery for any injuries, if any arising out of exposure to asbestos containing products designed, manufactured, distributed, sold, or marketed by or any actions or inactions of Asbestos Corp. Ltd., Atlas Turner, Inc., Lac D'Aminate du Quebec, Les Mines D'Amiante Bell, Ltd., and/or Societe Miniere Mazarin, Inc. To the extent plaintiff has been exposed to such asbestos containing products, if at all, plaintiff hereby waives his right to recover damages for such injuries.

53.     Should any verdict in this case assign responsibility in whole or in part for any or all Plaintiff's injuries to damages to the entities Asbestos Corp. Ltd, Atlas Turner, Inc., Lac D'Amiante du Quebec, Les Mines D'Amiante Bell, Ltd., and/or Societe Miniere Mazarin, Inc., and if such verdict should be upheld upon proper post judgment motion, plaintiff hereby waives, and will remit and release, that portion of his damages. Plaintiff seeks and will seek the entry of a final judgment in this action against defendants that rewards them only that portion of their damages assigned by the jury and court to the named defendants.

54.     Due to the passage of time since the Plaintiff was exposed to asbestos, the Plaintiff has been unable to ascertain the identities of all manufacturers, suppliers, distributors, and installers of asbestos-containing products to which he was exposed and hereby re-assert each of the foregoing allegations against John Doe Defendants #1-500 and John Doe Corporate Defendants #1-500.

WHEREFORE, the Plaintiff demands judgment against all Defendants, jointly, severally, and collectively for compensatory and punitive damages in an amount to be determined by a jury, for prejudgment interest from the date of the filing of this Complaint, costs, and such other and further relief as may be deemed appropriate.

RESPECTFULLY SUBMITTED this, the _____7____ day of June, 2010.

BRADLEY BALLARD, PLAINTIFF

BY: _____

R. ALLEN SMITH, JR.

22

OF COUNSEL:

R. Allen Smith, Jr. – MSB #99984
THE SMITH LAW FIRM, PLLC
681 Towne Center Blvd., Suite B
Ridgeland, MS  39157
Telephone:  (601) 952-1422
Facsimile:  (601) 952-1426

Timothy W. Porter – MSB #9687
PORTER & MALOUF, PA
Post Office Box 12768
Jackson, MS  39236
Telephone:  (601) 957-1173
Facsimile:  (601) 957-7366